Pages 1 - 27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAXINE M. CHESNEY, JUDGE

```
UNITED STATES OF AMERICA,      )
                               )
             Plaintiff,        )
                               )
   VS.                         )      No. CR 18-00196 MMC
                               )
RENATO LIBRIC,                 )
                               )
             Defendant.        )      San Francisco, California
_____)
```

Wednesday, September 5, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

```
For Plaintiff:          ALEX G. TSE
                        Acting United States Attorney
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                   BY:  MATTHEW MCCARTHY
                        ASSISTANT UNITED STATES ATTORNEY


For Defendant:          PIER 5 LAW OFFICES
                        3330 Geary Boulevard
                        3rd Floor East
                        San Francisco, California 94118
                   BY:  RANDOLPH E. DAAR, ESQ.


Reported By:  BELLE BALL, CSR 8785, CRR, RDR
              Official Reporter, U.S. District Court
```

1    **Wednesday - September 5, 2018**                              **2:22 p.m.**

2                          **P R O C E E D I N G S**

3          **THE CLERK:**  Calling Criminal Case No. 18-196.  United

4     States versus Renato Libric.

5        Counsel, please step forward and state your appearances

6     for the record.

7        (Defendant present, in custody)

8          **MR. McCARTHY:**  Good afternoon, Your Honor.  Matt

9     McCarthy for the United States.

10         **THE COURT:**  Thank you.

11         **MR. DAAR:**  Good afternoon, Your Honor.  Randolph Daar

12    appearing.

13         **THE DEFENDANT:**  Good afternoon, Your Honor.  Renato

14    Libric appearing.

15         **THE COURT:**  Thank you.

16       The Court, to wit, myself, received earlier today, I

17    think, actually, a proposed plea agreement, a courtesy copy of

18    it.

19       Is it the intent, at least at the moment, to go forward

20    under this plea agreement?

21         **MR. McCARTHY:**  Yes.

22         **MR. DAAR:**  Yes, Your Honor.

23         **THE COURT:**  Have any changes been made since the time

24    this was submitted to me?

25         **MR. McCARTHY:**  No, Your Honor.

1          **THE COURT:**  Okay.  Well, then, I think what we ought

2     to do is have Mr. Libric sworn, because I'm required to ask

3     him a lot of questions.

4          Okay.

5          (Defendant placed under oath)

6          **THE COURT:**  All right, thank you.  You may put your

7     hand down.

8          All right.  What is your true name sir, in full?

9          **THE DEFENDANT:**  Renato Libric.

10         **THE COURT:**  Okay.  Mr. Libric, I was handed a copy of

11    a plea agreement.

12         And do we have an original of that, then?

13         **MR. DAAR:**  I have an original now, which we will

14    execute.

15         **THE COURT:**  All right.  Take a look at that, sir.

16         **MR. DAAR:**  I'll execute it.

17         Mr. Renato Libric will execute it.

18         (Defendant signs document)

19         (Off-the-Record discussion between Counsel)

20         (Counsel sign document)

21         **MR. DAAR:**  I likewise signed it, Your Honor.

22         (Document handed up to the Court)

23         **THE COURT:**  All right.  So turning back to the last

24    page for a moment, there's a signature here on the last page

25    over your name.

1          Did you just sign that, sir?

2               **THE DEFENDANT:**  Yes, I did, ma'am.

3               **THE COURT:**  And is that your signature, Mr. McCarthy?

4          **MR. McCARTHY:**  Yes, Your Honor.

5               **THE COURT:**  And Mr. Daar, your signature?

6          **MR. DAAR:**  Yes, Your Honor.

7               **THE COURT:**  All right, thank you.

8          Now, Mr. Libric, before you signed this, which you just

9     did a moment ago in court, did you have a chance to read it

10    over in full?

11              **THE DEFENDANT:**  Yes, I did, Your Honor.

12              **THE COURT:**  Have you had enough time to discuss all

13     of the contents of this plea agreement with your attorney?

14              **THE DEFENDANT:**  Yes, I did, Your Honor.

15              **THE COURT:**  Are you satisfied, at least as you stand

16     there now, that you understand everything in it?

17              **THE DEFENDANT:**  Yes.

18              **THE COURT:**  Okay.  Now, you are proposing to enter a

19    plea of guilty to Count 1 of the indictment.  And I want to

20    just take a quick look for a moment at that document again.

21         I believe that that is the only count.

22         Is that correct?

23         **MR. McCARTHY:**  Yes, Your Honor.

24         **THE COURT:**  All right.  I'm not even sure if it has a

25    number.  But it is the only charge, shall we say.

1            **MR. DAAR:**   (Nods head)

2            **THE COURT:**   All right.   So we're talking about the

3    same thing.

4            Now, put that aside.   Go back to where I was.

5            All right.   Now, the charge is wire fraud.   This is a

6    felony charge.   It's brought under Title 18 of the United

7    States Code Section 1343.

8            Now, every crime has a set of elements.   In other words,

9    the minimum number of facts that the government would have to

10   prove to a jury before you are or anybody else could be found

11   guilty of this charge.

12           And what they would have to prove in your case is that you

13   knowingly participated in or devised or intended to devise a

14   scheme or a plan to defraud or a scheme or a plan for obtaining

15   money or property by means of false or fraudulent pretenses,

16   representations, or promises.

17           That the statements made or facts omitted as part of the

18   scheme were material.   That is, that they had a natural

19   tendency to influence or were capable of influencing a person

20   to part with money or property.

21           And that you acted with the intent to defraud.   In other

22   words, the intent to deceive or cheat someone.

23           And that you used or caused or used an interstate wire

24   communication, to carry out or attempt to carry out an

25   essential part of the scheme.

1    The very last part is what changes this from perhaps a

2 state crime to a federal crime.  And could cover a telephone

3 call or wire transfers of money, for example.  It doesn't take

4 much to qualify under that last part, if somebody wanted to

5 bring a case here in federal instead of state court.

6         **THE DEFENDANT:**  I understand.

7         **THE COURT:**  All right.  Do you understand the

8  elements?

9         **THE DEFENDANT:**  I do understand.

10        **THE COURT:**  Okay.  The maximum penalties, I'm going

11  to give you in a moment.  These are not -- this is not the

12  sentence you would necessarily receive.

13    The very most -- he's putting his hands up in prayer.

14    This is the very most anybody could receive if they were

15 convicted, in whatever manner, of this crime.  And that's 20

16 years in prison, a maximum fine of $250,000 or twice the gross

17 gain or gross loss, whichever is greater.  There's a maximum

18 supervised-release term of three years.

19    Those are the maximums.  Do you understand that?

20        **THE DEFENDANT:**  I do understand that.

21        **THE COURT:**  All right.  Now, also, the Court is

22  required in almost all cases, I think essentially all, to

23  order restitution if someone has lost money.

24    Also, the Court is required, whether somebody can afford

25 it or not, to assess them a penalty, essentially, of $100 per

```
 1   felony.  Here, there's one, so it's $100.  That's the least of
 2   your concerns.
 3        I don't know; were you born here, sir?
 4            THE DEFENDANT:  No, I was not.  I'm a Croatian
 5    citizen.
 6            THE COURT:  Pardon me?
 7            THE DEFENDANT:  I'm from Croatia, from Europe.
 8            THE COURT:  All right.  If you are not a citizen of
 9    the U.S., a conviction of this crime could have very
10    significant immigration consequences.
11        Have you discussed that with your attorney?
12            THE DEFENDANT:  Yes, I did.
13            THE COURT:  Okay.
14        In the plea agreement it says that -- you're acknowledging
15    it's virtually certain that if you are convicted of this
16    offense, that since you're not a natural-born citizen of the
17    U.S., this could have significant effect for you.
18        I can't tell you whether this would result automatically,
19    or perhaps by the discretion of the immigration authorities, in
20    your being required to leave the country.  But it could, well.
21        And so as long as you are aware of that and you understand
22    that this is something within essentially a whole separate body
23    of law -- ordinarily, there are separate lawyers who get
24    involved with this in the immigration field.
25            THE DEFENDANT:  I understand that.
```

1          **THE COURT:**  It's a risk.  All right.  It's not a

2      guaranteed penalty, but it's a consequence, a risk.

3          All right.  Now, if you do plead guilty, you are going to

4      give up a number of Constitutional rights.  You have those,

5      whether you are a citizen or not.

6          **THE DEFENDANT:**  Okay.

7          **THE COURT:**  So in that respect, you have the right to

8      a jury trial.  You have a right to have 12 people sit down and

9      decide whether your guilt had been proved beyond a reasonable

10     doubt.

11         At the trial, you would have a right to assistance of

12     counsel, at no cost to yourself.

13         And, are you appointed in this case?

14         **MR. DAAR:**  No, Your Honor.

15         **THE COURT:**  You are retained.

16         **MR. DAAR:**  Yes, I am.

17         **THE COURT:**  All right.

18         But if you couldn't afford counsel, or can't continue to,

19     then counsel would be appointed for you, at no cost to

20     yourself.

21         **THE DEFENDANT:**  (Nods head)

22         **THE COURT:**  At trial, you have a right to confront

23     and cross-examine whatever witnesses the government would

24     call, a right to see all the evidence they are relying on and

25     presenting.

1     You would have a right to call your own witnesses and

2   bring evidence to court yourself, and to have the Court issue

3   subpoenas to require those witnesses and evidence to be here in

4   court on your behalf.

5     You have a right to remain silent.  You could testify if

6   you wanted to, but you can't be forced to.  And if you decided

7   not to, it couldn't be used against you in any way.  It can't

8   even be commented upon.

9     You have a right against self-incrimination.  Pleading

10  guilty is self-incriminating.

11    Before trial, you could have a right to move to suppress

12  evidence, which means keep it out of court if you felt it

13  wasn't properly obtained by the government.

14    There may be other defenses you could raise.  For example,

15  if you gave a statement and they want to use it against you,

16  you might have a right to keep that out if it wasn't taken

17  properly.

18    The government may have more discovery, things in their

19  file that they won't have to give you once you enter a plea.

20    And there could be other defenses, sometimes called

21  "affirmative defenses," where maybe you're not contesting what

22  happened, but there's some procedural flaw.  They waited too

23  long to bring the charge or something like that.

24    Okay.  So, do you understand that you have all these

25  rights?

1           **THE DEFENDANT:**  Yes.  Thank you.

2           **THE COURT:**  Okay.  Do you understand if you plead

3    guilty, you are going to give them up?

4           **THE DEFENDANT:**  I understand that, yes.

5           **THE COURT:**  All right.  You won't lose Mr. Daar.  All

6    right?  He will continue to represent you.  However, it won't

7    be in the context of a trial.  It would be in the context of

8    helping you with whatever happens if you plead guilty.

9      Okay?

10          **THE DEFENDANT:**  I understand.

11          **THE COURT:**  All right.  You also said you agree to

12   waive venue, if necessary, for the charges filed.

13     Is there a venue question here, Mr. McCarthy?

14          **MR. McCARTHY:**  Not that -- I don't believe so,

15   Your Honor.  It's a fairly standard issue.

16          **THE COURT:**  Okay.  So that was just kind of plugged

17   in there as part of the sort of boilerplate.  Okay.

18          **MR. DAAR:**  (Nods head)

19          **THE COURT:**  All right.

20     Now, if you went to trial, you would have a right to

21   appeal if you had the misfortune of being convicted.  And to

22   have a counsel appointed for you if you can't afford counsel,

23   all through the appeal.

24     If you plead guilty under this plea agreement, you are

25   giving up your right to appeal.

1          Do you understand?

2               **THE DEFENDANT:**  I understand that.

3               **THE COURT:**  Okay.  You could file a challenge, very

4   limited.

5          So if you didn't have this plea agreement and you went to

6   trial, and you were convicted, on top of the appeal you could

7   file what's sometimes called a collateral attack or a petition

8   for a writ of habeas corpus.  It's a big word.  Just gives you

9   more opportunity to challenge the conviction.

10         You don't have a right, under those circumstances,

11  automatically to a lawyer.  Sometimes one could be appointed

12  for you.

13         Here, you are giving up that right, with one exception:

14  If you could show that your attorney did not provide you

15  effective assistance.  All right.  That's a pretty narrow

16  window.

17         Do you understand that?

18               **THE DEFENDANT:**  I do understand that.  Thank you.

19               **THE COURT:**  Okay.  Now, I can't take a plea from

20   someone if they're just nervous.  There has to be some factual

21   basis for it.

22         You have set out in a very lengthy section that starts on

23  Page 2 of the agreement and goes on for quite some time, well

24  into Page 4, under the item numbered 2.

25         It sets forth a number of facts that essentially boiled

1   down to you were a shareholder and CEO of a company.  And in

2   order to get people to invest in it, you over-stated its

3   prospects and its finances, and you used various documents to

4   do that.

5        And as a result, some -- I guess principals in an LLC

6   called Moose Run invested a pretty good chunk of money in this

7   company.

8        Is it pronounced "Box Tea" or --

9            THE DEFENDANT:  "Bow Tie."

10           THE COURT:  "Bow Tie."  Oh, I'm sorry.  Oh, I see.

11   "Bow."  Well, sort of "bow," all right.  "Bow tie."  All

12   right.  Phonetically, it wasn't coming quite out that way.

13       All right.  And then on top of that, then money was

14   transferred to this company, and then you pulled out various

15   smaller sums of it, and transferred that into your own account,

16   according to the statement here, as well -- I don't know,

17   100,000 and 11,000 and change, and then 25,000.

18       Okay.  Is that part of all this, or not?

19       You're looking somewhat quizzical so --

20           MR. DAAR:  Yes, because some of that money actually

21   comes back into the company.

22       But the allegation that the money was raised using

23   fraudulent statements to get people to invest is correct.

24           THE COURT:  Yeah.  Then that money, though, did it go

25   -- I thought it went into the Bouxtie account.  The money that

1   came from Moose Run.

2            **MR. DAAR:**  The money that came from the investor went

3   into Bouxtie.

4            **THE COURT:**  Yes.  That's what I said.  And then, but

5   then Mr. Libric says he took certain amounts out of that money

6   and put it in his own account.

7            **MR. McCARTHY:**  Yes.

8            **MR. DAAR:**  He'd take certain amounts out --

9            **MR. McCARTHY:**  He returned -- he returned a subset of

10   it later.

11            **THE COURT:**  Okay.  Well, that's not in here.

12            **MR. McCARTHY:**  But these facts -- but these facts are

13   all true.

14            **THE COURT:**  Okay, but that's not in there.

15      I mean, you could have robbed somebody and then go back

16   and give the money back.  It would still be a robbery.

17            **MR. DAAR:**  We don't question -- yeah, it's where we

18   wound up.  In either case it would be improper, no matter

19   where it wound up.

20            **THE COURT:**  Okay.

21            **MR. DAAR:**  And we agree with that.

22            **THE COURT:**  All right.  So I had a kind of general

23   summary.  Your statement includes facts in more detail.

24      Are all of the facts set forth in that Item 2 in your plea

25   agreement true and correct in all respects?

1          **THE DEFENDANT:**  They are true and correct,

2     Your Honor.

3          **THE COURT:**  Okay.  Thank you.  So let's get past

4     that.  Let me ask you a question.  I don't want hear your

5     private conversation with Mr. Daar, but just yes or no.

6          Have you had enough time to discuss with him any possible

7     defenses you might have to the charge?

8          **THE DEFENDANT:**  Yes, I did.

9          **THE COURT:**  Okay.

10          As you stand there now, are you reasonably satisfied that

11     admitting the charges or the charge here is in your best

12     interest?

13          **THE DEFENDANT:**  Yes, it is.

14          **THE COURT:**  Okay.  You have a limited agreement with

15      the government regarding the outcome of the case.  Now, it's

16      not a binding agreement in the sense that the lawyers are

17      bound, but I'm not.  Okay.

18          So they, on -- Mr. Daar on your behalf, Mr. McCarthy on

19     behalf of the government, has to abide by certain things that

20     they promise to do here, which is to agree that in the first

21     instance, they're going to calculate the guideline range using

22     an offense level, in this instance, of 20.  Okay.

23          Did you go over how you would calculate guidelines with

24     Mr. Daar?

25          **THE DEFENDANT:**  Yes, I did.

1          THE COURT:  Did he show you a page in the back of a

2     book with a bunch of numbers on it?

3          THE DEFENDANT:  A big book.  We went three times over

4     it, yeah.

5          THE COURT:  With a bunch of numbers in the back.

6          THE DEFENDANT:  (Nods head)

7          THE COURT:  Okay.  There's no agreement as to the top

8     line.  That's criminal history.  At some point I have to

9     decide what that is.

10        And it could be -- I don't know if you have been in

11    trouble before or not.  There are various categories from I to

12    VI, I think.  Then that goes across the top.  Up and down on

13    the side are numbers.  And the higher the number, the worse it

14    is.

15        Okay.  You do agree, on the number 20.  I may or may not

16    come out with 20.  I'm not saying I'll come out with something

17    different, but your lawyer and Mr. McCarthy are agreeing that

18    that's how they have calculated, that's how they're going to

19    ask me to use that number, in choosing a guideline range.

20        And I don't have to -- once I get the criminal history and

21    the number 20, there's a box.  Okay.  I don't have to impose

22    that sentence.  Again, I don't know what it's going to be.

23          THE DEFENDANT:  (Indicating)

24          THE COURT:  But anyway, that's an authority much

25     higher than I am, okay, that you're looking to there.

1     In any event, I have to calculate it, but I don't have to

2  choose a sentence there.  I can choose any sentence.  It could

3  be higher or lower.

4          **THE DEFENDANT:**  I understand.  Thank you.

5          **THE COURT:**  All right.

6     Then, essentially, if you were sent to prison for some

7  period of time, if you were, and you were placed on supervised

8  release, then one of the conditions you're agreeing to would be

9  a special search condition, which just means any law

10  enforcement officer can search you.

11     And they don't need all the other good cause they

12  otherwise might ordinarily need if you weren't on supervised

13  release or probation, I guess it could also be, if there were a

14  probation sentence.

15          **THE DEFENDANT:**  I understand that.

16          **THE COURT:**  Okay.  You're agreeing you will make

17  restitution as ordered, and that it won't be limited just to

18  the one count, but it won't be less than 1,500,000.

19     You also had a kind of generic agreement to forfeit any

20  property used in connection with the crime, but none was

21  spelled out.  And so I don't think anybody at the moment is

22  focusing on that particular -- you didn't go out and buy a boat

23  or something, right?

24          **THE DEFENDANT:**  No.

25          **THE COURT:**  Okay.  All right.  Let me just see here.

1      Okay.  And the government is going to agree not only to

2   that guideline range, I guess, but to recommend a sentence

3   within that range.  So that they're -- they -- they're agreeing

4   they aren't going to go any higher.  And you can go lower in

5   your recommendation.  And the Court's going to try and decide

6   what's best.

7          **THE DEFENDANT:**  I understand that.  Yeah.

8          **THE COURT:**  That's the agreement so far.

9      Have you taken anything that might include a drug or

10  alcohol, even by a prescription, that could affect your

11  thinking here today?

12         **THE DEFENDANT:**  No.  I don't drink; I don't smoke; I

13   don't take drugs.  I never did.

14         **THE COURT:**  Okay.

15         **THE DEFENDANT:**  Thanks.

16         **THE COURT:**  Are you supposed to be taking anything,

17   any prescription medication that you didn't take before you

18   came?

19         **THE DEFENDANT:**  No.

20         **THE COURT:**  Has anybody threatened you in any way to

21   encourage you to change your plea?

22         **THE DEFENDANT:**  God, no.  No.

23         **THE COURT:**  Has anybody made any promises to you

24   other than the promises that are set out in your plea

25   agreement?

1          **THE DEFENDANT:**  No.

2          **THE COURT:**  Okay.  Mr. McCarthy, is there anything of

3    either a general admonition nature or specific to this

4    agreement you would like me to go over?

5          **MR. McCARTHY:**  No, Your Honor.

6          **THE COURT:**  What about yourself, Mr. Daar?

7          **MR. DAAR:**  No, Your Honor.

8          **THE COURT:**  Do you have any questions sir, Mister --

9          **THE DEFENDANT:**  Everything is very clear.  And thank

10   you for explaining it one more time to me.

11         **THE COURT:**  And it may sound repetitious, but I know

12   once you have read it, and you're saying:  Gee, I've said all

13   that in the papers, but the law requires me to go over it with

14   you.  It's a very important decision, as I'm sure you are

15   aware.

16         **THE DEFENDANT:**  I am.

17         **THE COURT:**  Okay.  So I'm going to turn to the

18   indictment.  And I just want to say here that -- yes, Count 1,

19   it starts on Page 3.  And so -- I am not going to read the

20   whole document, though.

21      All right.  If you want to look, starting on Page 3, just

22   because that's the count I'm going to ask you about.  Okay.

23      All right.  Renato Libric, you are charged in Count 1 of

24   the indictment with a violation of Title 18 of the United

25   States Code, Sections 1343 and 2.  Briefly described as wire

1    fraud and aiding and abetting.

2        To that charge as fully set out in Count 1, what is your

3    plea?

4                **THE DEFENDANT:**  Guilty.

5                **THE COURT:**  Okay.  Is your plea guilty or not guilty?

6                **THE DEFENDANT:**  I'm guilty.

7                **THE COURT:**  So your plea is guilty?

8                **THE DEFENDANT:**  Yes.

9                **THE COURT:**  Okay.  All right, then I'm accepting the

10   guilty plea.

11       We've had a fairly lengthy discussion about this matter.

12   I'm satisfied that the plea is voluntarily made and also

13   knowingly made.

14       Mr. Libric also has executed the plea agreement knowingly

15   and voluntarily, and he has admitted the essential elements of

16   the crime charged.  So I'm accepting the plea.

17       And then I don't know whether Ms. Geiger gave you a

18   proposed date to come back.

19                **MR. McCARTHY:**  She did, Your Honor.  We're asking for

20   December 5th.

21                **THE COURT:**  Is that agreeable to everyone?

22       (Off-the-Record discussion between defendant and counsel)

23                **THE COURT:**  Mr. Daar?  Do you want a different day?

24                **MR. DAAR:**  We had talked about December 5th, and that

25   was with your clerk (Indicating).  And she had originally

1    suggested the 12th, and I had asked for the 5th.

2        Mr. Libric's mother is in a terminal condition with lung

3    cancer, in Croatia.

4            **THE COURT:**  She's there.  He's here.

5            **MR. DAAR:**  I'm sorry?

6            **THE COURT:**  She's there.  He's here.

7            **THE DEFENDANT:**  (Nods head)

8            **THE COURT:**  So what is he hoping --

9            **MR. DAAR:**  What I was asking was if the sentencing

10    could be any sooner.  I understand the restrictions of

11    Probation and everything else.  And that he could be sentenced

12    some time in November.

13            **THE COURT:**  I don't know, and can't guarantee he

14    would get out at that time anyway.  And then, there may be

15    immigration holds and -- I don't know what.

16        I mean, this is very sad that -- how long has -- well, how

17    long has Mr. Libric been here?

18            **MR. DAAR:**  He's been, how long --

19            **THE DEFENDANT:**  Four months.

20            **THE COURT:**  Only four months.

21            **MR. DAAR:**  Yeah.  No, he's been in North County Jail

22    in Oakland.  It's been pretty rough.

23            **THE COURT:**  I'm sorry.  How long has he been in the

24    U.S.?

25            **MR. DAAR:**  Four months.

1          **THE COURT:**  That's all?

2          **MR. McCARTHY:**  No, Your Honor.

3          **THE COURT:**  That can't be right.

4          **MR. McCARTHY:**  He's been in custody for four months.

5     He's been in the country for about three years.

6          **THE COURT:**  U.S.  How long has he been here in the

7     United States?

8          **THE DEFENDANT:**  On and off, I usually come for a

9     month or two, because I was traveling.  I was more in Croatia

10    than here.

11         **THE COURT:**  Oh, I see.  So he comes and goes.

12         **THE DEFENDANT:**  Yes --

13         **THE COURT:**  And he was hoping to come back because he

14    knew his mother was not well.

15         **THE DEFENDANT:**  That's what -- I was working here to

16    help --

17         **THE COURT:**  That's going to be tough.  I'm sorry.

18    I'm sorry for her condition, and also because obviously, he

19    cares about his mother, and he wants to be with her.

20        I don't think that we can -- I mean, we can try to

21    accelerate the process.  But it would have no guarantee that

22    he's going to be able to be with his mother.

23        And is he in contact with her, at least, so he can speak

24    to her in some way?

25         **MR. DAAR:**  Yes, they are in weekly contact.

1      **THE COURT:**  Okay.  Well, at least that.

2    Is his dad still alive?  Is he with his mother?

3      **THE DEFENDANT:**  My dad is eighty, and he's also sick.

4  So I was the one providing for them.

5      **THE COURT:**  Okay.

6      **THE DEFENDANT:**  And my mom needs to have lung

7  transfers.  So it's also -- she has, like, three months or so

8  if she -- if that happens.  And then --

9      **THE COURT:**  Are there other children in Croatia?

10      **THE DEFENDANT:**  I have a -- no.  I'm the only kid.

11      **THE COURT:**  You're the only one.

12      **THE DEFENDANT:**  Yeah.

13      **THE COURT:**  I understand this is very hard on him.

14  What was the date you were asking for?

15      **MR. DAAR:**  We, your clerk had said the 12th.  I had

16  pushed it a week to the 5th.  And I don't know; I want to see

17  if I can push it any further with you.

18      **THE COURT:**  Well, you know, I mean, I'm just thinking

19  about today -- let me just look at the calendar.  Today being

20  September 5.

21    Wait a minute.  And so what month were -- was recommended

22  initially?

23      **MR. DAAR:**  Well, you know, some time in November?  I

24  would be willing to shorten my opportunity to respond --

25      **THE COURT:**  Well, they need some amount of time to

```
 1   investigate.
 2        What are they usually asking for, Ms. Geiger?
 3            THE CLERK:  Well, we have the -- let's see.
 4            THE COURT:  This will be off the record for a minute.
 5        (Off-the-Record discussion between the Court and Clerk)
 6            THE COURT:  All right.  They're asking essentially
 7   for two and a half months, you know.  That would have taken
 8   us, I guess, into -- something doesn't seem right here.
 9        What was the date you gave them?
10            THE CLERK:  Because he's in custody, it was December
11   the --
12            THE COURT:  But what date did you originally get,
13   Mr. McCarthy?
14        MR. McCARTHY:  The date that was proposed was the
15   12th.
16            THE COURT:  Oh.
17        MR. McCARTHY:  Of December.  Mr. Daar asked to move
18   it back a week.  I had no objection.
19            THE COURT:  Okay.
20        MR. McCARTHY:  And --
21            THE COURT:  So I'm not sure, you know, why they need
22   as much time.  But of course, there has to be time also for
23   them to get the report to counsel in advance.
24        Counsel has to look at it, see if they have objections,
25   changes.
```

1           **MR. McCARTHY:**  Your Honor --

2           **THE COURT:**  You can't really waive that.  No.  So,

3   I'm sorry.

4           **MR. McCARTHY:**  I was going to say, if the Court's

5   available, we can do the last week of Thanksgiving -- of

6   November, which will be after Thanksgiving.

7       I can't really agree to anything shorter than that because

8   there are restitution issues, and the victims need to be

9   contacted and things like that.  So that's about as early as

10  the government can agree.

11          **THE CLERK:**  It would be the 28th.

12          **THE COURT:**  Yeah, I'm looking at that.  Well, we

13  could try it.  But, you know, also, for all we know, the

14  probation officer isn't going to be around the Thanksgiving

15  week.  It's pretty short.  There's also some other holidays, I

16  think, coming up.

17      Gee.  And, you know, we don't know how --

18          **MR. DAAR:**  No, we don't.

19          **THE COURT:**  -- long --

20          **MR. DAAR:**  And all he can do and I can do is try to

21  move the sentencing, to get what time we can.

22          **THE COURT:**  We don't know what -- what -- you know --

23  well, we have a prognosis I guess that's not good, but we

24  don't know much beyond that, about Mrs. Libric.

25      (Off-the-Record discussion between defendant and counsel)

1      **THE DEFENDANT:**  Doctors are giving three months.  If

2  she get the lungs by that time, she could then live another

3  ten years.  But, 50/50 chance of the survival of the

4  operation.

5      **THE COURT:**  This is a transplant question?

6      **THE DEFENDANT:**  Lung transplant, yeah.  It's -- yeah.

7      **THE COURT:**  They don't have a donor yet.

8      **MR. DAAR:**  They have a long waiting list in Croatia.

9      **THE COURT:**  Yeah.

10      **THE DEFENDANT:**  A long waiting -- if I may say, my

11  mom just said, like, "I was there when I put you in this

12  world; you can at least be with me when..."

13      **THE COURT:**  Right.  Well, you know, I can try

14  November 28th.  That's about the best I can do.  And I think

15  we have to say if they -- if they can do it.  You know.

16      If they can't, then they're going to have -- I think we

17  have to make clear -- I would ask, perhaps, Mr. McCarthy, if

18  you could convey it, and also Mr. Daar, since it's at your

19  request, that the Court said if they can, we'd appreciate it

20  because of the situation back home.  But if they cannot do it,

21  then we understand.

22      Particularly with that short week, which may be totally

23  gone.  Most, most everybody -- most of the departments are

24  looking at a three-day Thanksgiving week.  And some people take

25  it to go back east or take time off.

1    So --

2         **MR. DAAR:**  I will communicate all that to Probation

3    when I make the referral, and to the officers doing the PSR

4    writing, so that they're aware of it, and do the best they

5    can.

6         **THE COURT:**  All right.

7         **MR. McCARTHY:**  And Your Honor, I don't mean to cause

8    any disruption, but I just do want to be clear that the

9    government's agreement to move the sentencing date does not

10   reflect the sentence that we're going to recommend.

11        **THE COURT:**  Oh, no, no.  And I've told Mister --

12        **MR. McCARTHY:**  Okay.

13        **THE COURT:**  -- Libric that -- I mean, there's no

14   guarantee that, that this is going to be a sentence in which

15   he's going to walk out of here on the day of sentencing.  I

16   have no idea of what this case is all about, except the very

17   general description.  And that's -- and very little about

18   Mr. Libric.  So he has to understand that.

19        **MR. DAAR:**  He totally understands that, as, I do.

20   And we appreciate the government's willingness to move the

21   sentencing to the 28th.

22        **THE COURT:**  All right.  Again, please convey to the

23   Probation Office -- and I don't know if you will be in touch

24   with them, Ms. Geiger, but also if you are, to let them know.

25        In the meantime, I will give the court clerk, Ms. Geiger,

1   the plea agreement to be filed.

2        (Document handed down)

3            **MR. McCARTHY:**  Thank you, Your Honor.

4            **THE CLERK:**  Thank you.

5            **THE DEFENDANT:**  Thank you.

6            **THE COURT:**  All right.  Then that's going to conclude

7   the proceeding today in this case, and we will take the next

8   case afterwards.

9            **MR. DAAR:**  Thank Your Honor.

10           **MR. McCARTHY:**  Thank you.

11       (Proceedings concluded)

1

2

3

4                     **CERTIFICATE OF REPORTER**

5          I, BELLE BALL, Official Reporter for the United States

6    Court, Northern District of California, hereby certify that the

7    foregoing is a correct transcript from the record of

8    proceedings in the above-entitled matter.

9

10                        *Belle Ball*

11                    _____/s/ Belle Ball_____

12              Belle Ball, CSR 8785, CRR, RDR

13                  Friday, October 5, 2018

14

15

16

17

18

19

20

21

22

23

24

25