ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

MATTHEW L. McCARTHY (CABN 217871)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6838
    FAX: (415) 436-7234
    Matthew.McCarthy@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 18-00196 MMC |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: December 19, 2018 |
| RENATO LIBRIC, | Time: 2:15 p.m. |
| Defendant. | Judge: Honorable Maxine M. Chesney |

PLEA AGREEMENT
CR 18-00196 MMC

**I.     INTRODUCTION**

On September 5, 2018, defendant Renato Libric pleaded guilty to a single count of Wire Fraud in violation of 18 U.S.C. § 1343.  The Plea Agreement entered into between the parties agreed upon an Adjusted Offense Level of 20 under the United States Sentencing Guidelines.  The United States Probation Office has determined that the defendant's applicable Sentencing Guideline Range is 33-41 months imprisonment, and the Probation Officer has recommended a sentence of 33 months.

As set forth below, the United States agrees with the Guideline Range calculated by the Probation Office, but believes that a sentence in the middle of the applicable Guideline Range is appropriate here.  Accordingly, the government respectfully recommends that the Court impose a sentence of 37 months, followed by a three-year term of Supervised Release.  The government further requests that the Court order the defendant to pay restitution in the amount of $1,520,074.

**A.     Indictment**

On May 10, 2018, a one-count indictment was filed in the Northern District of California, charging Renato Libric with a violation of 18 U.S.C. §  1343 – Wire Fraud.  (PSR ¶ 1.)   The defendant was arrested that same day, and was remanded into custody by the Honorable Joseph C. Spero following a detention hearing on May 15, 2018.  (*See* Docket No. 5.)

**B.     Plea Agreement**

On September 5, 2018, the defendant pleaded guilty to the sole count of the indictment.  (*See* Docket No. 17.)   As set forth in detail below, Libric admitted to defrauding investors of $1,500,000 through a series of false representations supported by fraudulent documents.  (*Id.* at ¶ 2.)

In the Plea Agreement, the parties agreed that the appropriate Guidelines Offense Level was 20, and Libric agreed to pay the victim investors restitution in an amount no less than $1,5000,000.  (*Id.* at ¶¶ 7, 9.)

The parties agreed that the defendant could seek a downward sentencing variance pursuant to 18 U.S.C. § 3553(a), that that the government reserved the right to oppose any such request.  (*Id.* at 7.)

**C.     Offense Conduct**

Libric's offense grew out of his efforts to fraudulent obtain over a million dollars from investors for his company -- Bouxtie, Inc.  Libric was the founder and CEO of Bouxtie, a startup company that

SENTENCING MEMORANDUM
CR 18-00196 MMC                                           1

sought to facilitate the sending and use of digital gift cards. (PSR ¶ 6.) Libric incorporated Bouxtie in 2014, but by 2017, the company was in dire financial straits. (PSR ¶ 6, 9.)

Beginning in August 2017, and continuing until at least March of 2018, Libric engaged in a complex scheme to defraud Moose Run LLC and its principal investor of $1,500,000. (PSR ¶¶ 7-15.) Libric first met with Moose Run LLC and its investors in August 2017. From the beginning of their business relationship, Libric made false and misleading statements to the potential investors in order to obtain a significant investment.

As an initial matter, Libric falsely informed the investors that he had the authority to sell a significant number of Bouxtie shares to them, when in fact the Board of Directors had not authorized such a sale. (PSR ¶¶ 8-10.) In support of this false claim, Libric eventually created a fraudulent "Corporate Resolution of Bouxtie, Inc." which purported to authorize Libric to enter into the $1,500,000 transaction with Moose Run LLC. (Plea Agreement, ¶ 2.) In fact, the Board of Directors had not authorized the transaction, and Libric forged the signatures of the directors on this document. (*Id.*)

Libric also fraudulently created or altered documents designed to make Bouxtie look like a much stronger investment than it in fact was. Libric created a false Term Sheet that purported to indicate that a large publicly-traded corporation was interested in purchasing Bouxtie for $150,000,000, and then forged the signature of a corporate executive on that document. (PSR ¶ 8; Plea Agreement ¶ 2.) Libric then caused this document to be transmitted to Moose Run. (*Id.*) When Moose Run sought bank records to verify Bouxtie's financial strength, Libric provided them with false statements showing a balance of over $2,000,000. (PSR ¶ 9.) The actual balance of Bouxtie's account at that time was $7,642. (*Id.*)

Relying on these representations and documents, Moose Run invested $1,500,000 in Bouxtie on October 13, 2017. (PSR ¶ 10.) On December 12, 2017, Libric sent Moose Run a fraudulent stock certificate indicating that Moose Run had purchased 947,059 shares of Bouxtie stock. (PSR ¶ 12.) Libric further led Moose Run to believe that its principal investor had been made a director of Bouxtie. (*Id.*) In fact, the Board of Directors had not authorized the issuance of the stock, and had not voted to place any Moose Run representative on the board. (*Id.*)

In February 2018, Moose Run determined that it had been the victim of a significant fraud, and

SENTENCING MEMORANDUM
CR 18-00196 MMC                                                 2

that Libric's representations and documents were false. By that time, over $1,300,000 of Moose Run's $1,500,000 investment was gone. (PSR ¶ 13.) A review of the company's bank statements showed that Libric had transferred over $130,000 of the invested funds to his own personal account in the weeks immediately following the investment. (PSR ¶ 11.) Prior to his arrest, virtually all of those funds were transferred overseas to London, England and Zagreb, Croatia.[1]

Following the discovery of the fraud and the defendant's arrest, Bouxtie ceased to function in any meaningful capacity.

## II. SENTENCING GUIDELINES CALCULATIONS

### A. The Sentencing Guidelines Post-Booker

Under the Sentencing Reform Act as modified by *United States v. Booker*, 543 U.S. 220 (2005), this Court must analyze and consider the guideline factors before imposing sentences in federal criminal cases. *Booker*, 543 U.S. at 259 (noting that the Sentencing Reform Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals; *see also United States v. Cantrell*, 433 F.3d 1296, 1279 (9th Cir. 2006) (noting that the [c]ontinuing duty of district courts to consult the Guidelines is statutory). This Court, having calculated the guideline range, should then look to the factors set forth by Congress in 18 U.S.C. § 3553(a) to determine a reasonable sentence for Defendant.

### B. Libric's Guidelines Calculations

Libric has a Base Offense Level of 7 pursuant to U.S.S.G. § 2B1.1(a)(1). The defendant is responsible for a loss of $1,500,000. Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), if the loss is more than $550,000, but not more than $1,500,000, the offense level increases by 14 levels.[2] Because Libric abused his position of trust as CEO of Bouxtie, Inc. to facilitate his fraud, his offense level is increased by 2. *See* U.S.S.G. § 3B1.3. As Libric has pled guilty, he is entitled to a 3-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Consequently, Libric has a Total Offense Level of 20. Libric has a Criminal History Category I. A Total Offense Level of 20 and a Criminal History

---

[1] If needed, the government can provide the Court with copies of the bank statements showing these transfers. However, the government does not believe that the defendant will contest that these transfers were made.

[2] It is worth noting that, had Moose Run's investment been a single dollar more, Libric's offense level would have been increased by 2 levels.

SENTENCING MEMORANDUM
CR 18-00196 MMC                                              3

Category I results in an advisory guideline imprisonment range of 33-41 months. Under the sentencing guidelines and Section 3553(a), a sentence of 37 months is appropriate in this particular case.

### III. STATUTORY SENTENCING FACTORS

Congress has provided a statutory sentencing scheme in 18 U.S.C. § 3553, which sets forth numerous factors for the Court to consider in its sentencing decision. Those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocations training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Guidelines; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1)-(7). Application of these factors to the present case supports a substantial prison sentence of 37 months.

**A. The Nature and Circumstances of the Offense**

The nature and circumstances of the offense warrant a substantial prison sentence. This was not a crime of passion, or a spontaneous bad decision. It was instead an elaborate fraud carried out over a period of months. Libric not only lied repeatedly to his potential investors, he also forged documents to support his lies. In this particular factual context – that of a business investment – the forged documents make the fraud particularly egregious. Here, the victim investors tried to do the right thing by conducting their due diligence prior to investing in Bouxtie. However, when the investors asked Libric for documents to support his claims, he created numerous forgeries – including a term sheet, a board authorization, and a bank statement – to defraud his victims of their investment capital. Businesses, particularly the start-up businesses that are so crucial to the economy of this District, rely on investors for capital. Those investors in turn rely on the businesses to provide them with accurate and honest

SENTENCING MEMORANDUM
CR 18-00196 MMC                                        4

information with which to make investment decisions.  When a business executive defrauds his investors, he not only causes immediate financial harm, he also discourages further investment in unrelated businesses.  Thus, the crime committed by Libric has the potential to harm not only his investors, but also other businesses in this District that need investors like Moose Run LLC to get off the ground.

### B. The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Afford Adequate Deterrence to Criminal Conduct

The offense of conviction in this case, Wire Fraud, is in the category of what are commonly described as "white collar" offenses. A sentence of imprisonment of 37 months will promote respect for the law and will demonstrate that defendants who commit financial crimes – and who do so over extended periods of time – will be held accountable when they break the law.

Moreover, promotion of respect for the law ties in with affording adequate deterrence. Cases involving white-collar crime offer a special opportunity for the Court to achieve the goal of general deterrence. A 37-month prison sentence for the defendant's conduct will serve as a powerful deterrent against the commission of such crimes by others. It is important to provide this deterrent "[b]ecause economic and fraud based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity," and, thus, "are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quotation omitted). "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Id*.; *see also United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) (same).  The *Martin* court further noted that "[t]he Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another offense." *Id.*; *see also* S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("The second purpose of sentencing is to deter others from committing the offense. This is particularly important in the area of white collar crime."). This defendant apparently calculated that defrauding investors who placed their trust in him was worth the risk. A lengthy sentence will change that calculus for other individuals who find themselves facing the same choices that this defendant faced.

SENTENCING MEMORANDUM
CR 18-00196 MMC                                                  5

Moreover, it is important that the public understand that "white collar" criminals are not treated with undue leniency in our justice system. This is particularly important where, as here, the defendant was a corporate executive who appeared to be running a successful business. The Tenth Circuit addressed these issues in *United States v. Sample*, 2018 WL 4056013 (10th Cir. 2018), where the court held that a sentence of five years of probation for a defendant-broker who had defrauded investors of more than $1 million was substantively unreasonable. There, the defendant's Guidelines range was 78 to 97 months, but the defendant argued to the district judge that he should receive probation because of his "charity and volunteer work. . . and his previous financial support of his family and friends." *Id*., *2. When announcing the sentence of five years of probation, the district judge said that part of his reasoning was the defendant's current "job and his earning capacity" which would allow the defendant to pay restitution to the investors he defrauded. *Id*.

The Tenth Circuit said that a judge "should not rely on a defendant's wealth in fashioning a sentence (citations omitted)." *Id*., *3. *See also United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) ("Business criminals are not to be treated more leniently than members of the 'criminal class' just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity."). The Tenth Circuit also emphasized the fact that the defendant had inflicted "considerable harm" on his victims when he misappropriated more than one million dollars, and that fact alone "weighs against the lenient nature of the sentence that the trial court imposed." *Sample*, *3.

The Tenth Circuit further noted that the defendant's lack of a criminal history, his acceptance of responsibility and the likelihood the defendant would not commit future crimes were not sufficient reasons to justify the significant downward variance from the Guidelines range. *Sample* at *4.

Just as in *Sample*, there is no basis for a downward variance in the present case. The government therefore believes that the statutory factors set forth in 18 U.S.C. § 3553(a) support a Gudelines-range sentence of 37 months.

**IV. THE COURT SHOULD ORDER THE DEFENDANT TO PAY RESTITUTION OF $1,520,074**

The Court, when sentencing a defendant convicted of an offense under Title 18 of the United States Code, shall order that the defendant "make restitution to any victim of such offense." 18 U.S.C.

SENTENCING MEMORANDUM
CR 18-00196 MMC                               6

§ 3663(a)(1). A victim is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." *Id*. § 3663(a)(2). The order of restitution shall require the defendant to "reimburse the victim for . . . expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense. *Id*. § 3663(b)(4).

In pronouncing the sentence, the Court should also order the defendant to pay restitution to the primary victim, Moose Run LLC. The defendant has agreed to pay such restitution in his Plea Agreement. (Plea Agreement, ¶ 9.) As set forth in the Plea Agreement, Moose Run LLC was defrauded of $1,500,000 as a result of Libric's scheme. (*Id*. ¶ 2.) In addition, Moose Run LLC incurred $20,074 in reimbursable expenses as follows:

| | |
|---|---|
| Attorneys Fees[3] | $6,417.00 |
| Investigation Fees | $12,305.62 |
| Travel Expenses | $1,351.45 |
| **Total** | **$20,074.07** |

The Court should therefore order Libric to pay $1,520,074 in restitution.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court, taking into consideration the Sentencing Guidelines and the factors set forth in Section 3553(a), sentence Defendant Renato Libric to 37 months in prison, three years of supervised release, a $100 special assessment, and restitution in the amount of $1,520,074.

Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

Dated: December 12, 2018

           /s/
MATTHEW L. McCARTHY
Assistant United States Attorney

---

[3] In calculating the appropriate reimbursable costs, the government included attorney's fees connected with Moose Run's cooperation with government's criminal investigation, and excluded attorney's fees connected with Moose Run's separate civil lawsuit against Libric.

SENTENCING MEMORANDUM
CR 18-00196 MMC                                                                 7