Patrick S. Aguirre (SBN: 189103)
**LAW OFFICES OF PATRICK S. AGUIRRE AND ASSOCIATES**
7847 Florence Avenue, Suite 107
Downey, California 90240
Telephone: (562) 904-4337
Facsimile: (562) 928-3999
psaguirrelaw@yahoo.com

Attorney for Defendant,
RENATO LIBRIC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RENATO LIBRIC, <br><br> Defendant. | Case No.  18-CR-00196 <br><br> **DEFENDANT RENATO LIBRIC'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)** |

   Defendant RENATO LIBRIC, by and through his attorney of record, Patrick S. Aguirre, hereby submits this Motion for Compassionate Release.  Defendant will and hereby does move the Court for an order for his immediate release from custody under 18 U.S.C. § 3582(C)(1)(A).

//

//

//

1
**DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

//

This motion is based upon the attached memorandum of points and authorities, all files and records in this case, and such evidence and argument as may be presented at the hearing on the motion. Due to the urgency of this emergency request, Mr. Libric requests an expedited briefing schedule and hearing at the Court's earliest convenience.

Dated: August 6, 2020

By: */s/ Patrick S. Aguirre*
Patrick S. Aguirre, Esq.
Attorney for Defendant,
RENATO LIBRIC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Renato Libric entered a guilty plea to a violation of 18 U.S.C. § 1343. On December 19, 2018, he was sentenced to 36 months in the custody of the Bureau of Prisons ("BOP"). Mr. Libric has been in custody since his arrest in May 2018 and has served nearly three-quarters of his sentence. He is currently housed in North Lake Correctional Facility in Baldwin, Michigan after being transferred from Taft Correctional Institute, which closed. On June 8, 2020, Mr. Libric made his second written request to the warden for compassionate release based on a medical condition. Exhibit 1. On June 16, 2020, counsel included a copy of that request in correspondence to the warden. *Id.* To date, neither Mr. Libric nor counsel has received a response from the warden. Mr. Libric suffers from heart issues, including hypertension, placing him at high risk should he contract Covid-19. Further, his elderly mother suffers from terminal lung cancer, as well as cryptogenic organizing pneumonia. She resides in Croatia, the country to which Mr. Libric will be extradited upon his release. Mr. Libric's elderly wheelchair-bound father, wife, and young son also reside in Croatia.

Given these extraordinary and compelling circumstances, compassionate release is warranted for this first-time, non-violent offender who is at high risk of contracting the Covid-19 virus.

## II.

## ARGUMENT

**A.   Mr. Libric Is Eligible for Compassionate Release Under 18 U.S.C. § 3582**

18 U.S.C. § 3582(c)(1)(A)(i) authorizes this Court to modify a term of imprisonment:

> "[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Notably, "extraordinary and compelling reasons" include situations where the defendant is suffering from a serious physical or medical condition that "substantially diminishes [his] ability to provide self-care within the environment of a correctional facility." U.S.S.G. §1B1.13, Application Note 1(A)(ii).

**B.     Requiring Exhaustion Would Be Futile, Provide Inadequate Relief, and Result in Irreparable Harm**

In April 2020, Mr. Libric made a written petition to the warden of the facility in which he was incarcerated at the time, Taft Correctional Institute.  He was subsequently transferred to North Lake Correctional Facility upon the closure of Taft CI.  On June 8, 2020, Mr. Libric made his second request to the warden for compassionate release. *Id.*  In a June 16, 2020 letter to the warden, counsel included a copy of Mr. Libric's second request. *Id.*  Mr. Libric has requested the warden make a motion for his compassionate release on no less than three occasions, the most recent of which was made over thirty days prior to the filing of this motion.  Thus, Mr. Libric clearly has satisfied the exhaustion requirements of § 3582(c)(1)(A)(i).

However, should the Court find any defect with his written request to the warden, Mr. Libric requests the Court consider his motion now because requiring exhaustion would be futile, cause irreparable harm, provide inadequate relief, and result in prejudice.

"Even where exhaustion is seemingly mandated by statute… the requirement is not absolute." *Washington v. Barr,* 925 F.3d 109, 118 (2d Cir 2019); *see also McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).  If the interest in efficiency that the exhaustion doctrine is designed further is outweighed by the defendant's interest in immediate judicial review, exhaustion is not required. *Id.* at 146.  Exhaustion may be waived where: "it would

be futile, either because agency decision-makers are biased or because the agency has already determined the issue" or because it "results in catastrophic health consequences"; "the administrative process would be incapable of granting adequate relief" or where relief becomes inadequate due to undue delay; or exhaustion would subject the defendant to undue prejudice or irreparable harm. *Washington*, 925 F.3d at 118-120; *see also McCarthy*, 503 U.S. at 146-147.

Mr. Libric meets all three considerations: exhaustion would be futile because the BOP has already determined the issue by failing to act and because Covid-19 will result in catastrophic health consequences; relief would become inadequate if Mr. Libric contracts Covid-19 due to the delay; and exhaustion would subject Mr. Libric to irreparable harm.

If the BOP was going to act, Mr. Libric would have already been released pursuant to Attorney General Barr's March 26, 2020 order to identify and transfer to home confinement any at-risk inmates who "are non-violent and pose minimal likelihood of recidivism." Memorandum from Attorney General William P. Barr to Director of the Bureau of Prisons, 2 (March 26, 2020). Indeed, the BOP "seems to have 'predetermined' the compassionate release issue by its failure to respond to the petitions before it." *United States v. Connell*, 18-CR-00281, ECF No. 49 at *9 (N.D. Cal. May 8, 2020) (granting compassionate release to 69-year-old defendant who suffered from hypertension, high cholesterol, and pre-diabetes). The *Connell* court noted that "in the span of 15 days in early April, the BOP had received 550 compassionate release requests from inmates in one federal prison. It had responded to 7. All 7 were denied." *Id.* The court continued:

> "A growing chorus of courts around this country has found section 3582's exhaustion provision is not a jurisdictional bar, but rather a claim-processing rule subject to exceptions which can and should be made under present circumstances. *See, e.g., Fischman*, 2020 WL 2097615 (N.D. Cal. May 1, 2020); *United States v. Guzman Soto*, No. 18-cr-10086, 2020 WL 1905323 (D. Mass. Apr. 17, 2020); *United States v. Coles*, No. 18-cr-20254, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020); *Russo*, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); *Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020). The issue has developed so rapidly that at least one court has already reversed itself on the issue. *See United States v. Scparta*, No. 18-cv-00578, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020). Here, an additional voice joins

that chorus and finds an exception to Section 3582's claim-processing exhaustion provision can, and should in the present circumstances, be recognized as the particular facts of the case dictate."

*Connell* at *9-10. Mr. Libric has brought this matter to the warden on three occasions. The warden has had since April to act. By failing to act in the three months since Mr. Libric's first request, the BOP has shown it has "already determined the issue" to Mr. Libric's detriment, and exhaustion is futile.

Due to the potential for irreparable harm and catastrophic health consequences, this Court should excuse exhaustion. Other courts have done the same in similar circumstances. *See, e.g., United States v. Powell*, No. 1:94-CR-316(ESH), ECF No. 98 (D.D.C. Mar. 28, 2020) (granting defendant's motion for compassionate release based on Covid-19 pandemic and defendant's health conditions, waiving § 3582(c)(1)(A)'s exhaustion requirement based on futility); *United States v. Yahoshua Ben-Yhwh,* No. 1:15-CR-00830, ECF No. 206 (D. Hawaii, April 13, 2020) (waiving exhaustion requirement and finding that "even a few weeks of delay exposes [defendant] to contracting COVID-19 and thus rendering the relief…inadequate"). It is hard to imagine a more irreparable harm than death, and that is what Mr. Libric faces as a high-risk individual exposed to Covid-19.

Mr. Libric has requested compassionate release from the warden on three occasions. The most recent request was June 16, 2020. Accordingly, this Court should find he has satisfied § 3582's exhaustion requirement.

## C.     There Are Extraordinary and Compelling Circumstances Justifying Release

According to the BOP, North Lake Correctional Facility currently has a confirmed case of Covid-19 in an inmate. "BOP: COVID-19 Update" available at bop.gov/coronavirus, accessed on July 13, 2020. However, the actual number of infections in North Lake are much higher. There has been a large outbreak of Covid-19 with the influx of inmates from Taft CI. The North Lake warden told inmates that the bus drivers who drove them from the Detroit airport to North Lake—without wearing personal protective equipment—had tested positive and been hospitalized. Medical staff in North

Lake have told inmates that there have been two Covid-19 related deaths at the facility between April and May. The medical staff was at maximum capacity caring for 120 inmates with Covid-19 at the peak of the outbreak, and additional inmates infected with Covid-19 were turned away and asked to self-isolate in their cells. Those inmates were left out of the official Covid-19 counts. Further, case numbers are being artificially decreased by the refusal of prison medical staff to provide Covid-19 tests to inmates. Based on the explosion of Covid-19 cases throughout BOP facilities across the country, these cases will increase exponentially.

According to the CDC, individuals who are incarcerated in jail or prison have a heightened risk of contracting Covid-19. *Interim Guidance on Mgmt of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* Centers for Disease Control and Prevention (March 23, 2020). However, BOP's "containment measures have already proven insufficient to prevent the spread of COVID-19." *United States v. Rodriguez,* 2020 U.S.Dist.LEXIS 58718 at *9 (E.D. Penn. April 1, 2020). Staff at North Lake did not wear personal protective equipment or enforce any distancing measures until 50 days into the outbreak. Moreover, inmates are unable to practice basic hygiene measures to prevent the spread of Covid-19: "Confined to a small cell where social distancing is impossible, [defendant] cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus." *United States v. Perez*, 2020 U.S.Dist.LEXIS 57265 (S.D.N.Y. Apr. 1, 2020). This is especially true in a maximum-security facility such as North Lake where social distancing is impossible. Release is justified where "the outbreak of COVID-19 and [a defendant's] underlying medical conditions [] place [him] at a high risk should he contract the disease." *United States v. Rodriguez*, 2020 U.S.Dist.LEXIS 58718 (E.D. Pa. Apr. 1, 2020).

Mr. Libric suffers from heart conditions, including hypertension and has been prescribed Lisinopril to be taken from May 7, 2020 to December 2, 2020. Exhibit 3. Individuals with high blood pressure are at increased risk of Covid-19, especially at a facility such as North Lake that does not have any respirators. See "People Who Are at

High Risk," Centers for Disease Control and Prevention, available at cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html, accessed July 13, 2020. A study published on April 22, 2020 found that among hospitalized Covid-19 patients, hypertension was the most common comorbidity at 56.6%. Richardson, et al., Presenting Characteristics, Comorbidities, and Outcomes *Among 5,700 Patients Hospitalized With COVID-19 in the New York City Area,* JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION (April 22, 2020) at E7. Similarly, a study of patients in Wuhan, China demonstrated that "patients with hypertension have more severe illness and higher mortality rates that those without hypertension," specifically that "patients with hypertension had more than 3 times the mortality rate of all other patients hospitalized with COVID-19." Li, et al., *Association of Renin-Angiotensin System Inhibitors with Severity or Risk of Death in Patients with Hypertension Hospitalized for Coronavirus Disease 2019 (COVID-19) Infection in Wuhan, China,* JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION, CARDIOLOGY (April 23, 2020) at E5.

  Recently, On July 30, 2020, one hundred to two hundred federal inmates were moved to North Lake County Facility from a federal prison in Oklahoma that closed its facility. Some of these inmates are sick with Covid-19. Currently, no masks are being provided to Mr. Libric or other inmates at North Lake Correctional Facility, subjecting them to Covid-19. Mr. Libric and the other inmates have been in lockdown for over 150 days. This has subjected Mr. Libric to severe emotional distress.

  Further, Mr. Libric's family circumstances are extraordinary and compelling circumstances justifying release. *See* U.S.S.G. § 1B1.13, Application Note (1)(C)-(D). Mr. Libric's mother, Anamarija Libric, resides in Croatia. She has been diagnosed with an aggressive lung cancer and her health is deteriorating rapidly. Exhibit 2. She also suffers from cryptogenic organizing pneumonia. Her lung capacity is at 25% and she requires oxgen. She is currently cared for by Mr. Libric's father, who is elderly and confined to a wheelchair. *Id.* Due to Mrs. Libric's medical conditions, they are self-isolating, which makes it difficult to get basic supplies as they have no family members close by to help

them. Mr. Libric's wife and child live 200 miles away and do not have a vehicle and so are unable to assist his parents. The financial situation due to the pandemic has further strained Mr. Libric's parents. Mr. Libric is the family's only breadwinner. His presence will provide mental and emotional support, as well as practical support in the care of his parents. This Court has already recognized the compelling family circumstances, recommending at sentencing that Mr. Libric be considered for International Treaty transfer; however, the transfer was denied in January 2020 on the grounds that Mr. Libric had less than six months left on his sentence, despite his release date of November 28, 2020—eleven months after the transfer denial.[1]

Based on Mr. Libric's hypertension which places him at high risk especially given the current conditions at North Lake Correctional Facility, and his family circumstances, including his mother who is dying of cancer in Croatia, this Court should find he has demonstrated "extraordinary and compelling circumstances" that justify compassionate release.

D. **Release Is Consistent with Section 3553(a)**

Under § 3582, the court must consider the Sentencing Commission policy statements and the § 3553(a) sentencing factors in determining whether to reduce a sentence. Those factors weigh in favor of release.

The Sentencing Commission states "extraordinary and compelling reasons" include situations where the defendant is suffering from a serious physical or medical condition that "substantially diminishes [his] ability to provide self-care within the environment of a correctional facility and from which he is unlikely to recover." U.S.S.G. §1B1.13, Application Note 1(A)(ii). As discussed above, Mr. Libric's hypertension places him at high-risk of mortality should he contract Covid-19. The high rate of Covid-19 cases running unchecked through BOP facilities demonstrates that individuals incarcerated in

---

[1] "An extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. §1B1.13, Application Note 2.

BOP facilities are unable to engage in the self-care behaviors—social distancing, mask wearing, frequent handwashing and disinfecting of surfaces[2]—shown to prevent the spread of Covid-19. In Mr. Libric's case, his hypertension substantially diminishes his ability to defend against potentially fatal consequences.

Mr. Libric is not a danger to the safety of other persons or the community, as required for release under USSG § 1B1.13(2). Mr. Libric is a first-time offender of a non-violent felony. Upon his release, he presents no danger to the community as he will be extradited to Croatia, where he will reside with and care for his wife, young child, elderly father, and terminally ill mother.

Further, the sentencing factors weigh in favor of release. Prior to this case, Mr. Libric had no criminal history. The offense is non-violent. He accepted responsibility for his actions and admitted his guilt to the court. *See* Dkt. No. 17. He has been incarcerated for two years and two months without incident or disciplinary infraction.

Although non-violent, Mr. Libric's offense was serious and caused a substantial financial loss to the victims. Accordingly, this Court determined a sentence of three years to be adequate to accomplish the goals of sentencing and to reflect the seriousness of the offense, promote respect for the law, and afford deterrence to future criminal conduct. This was a mid-range sentence, and the court indisputably had the authority to impose a harsher sentence. That the Court did not implies that this Court did not deem a harsher sentence appropriate or necessary. Mr. Libric has served nearly three-quarters of his sentence. However, with the explosion of Covid-19 cases in BOP facilities, further incarceration carries the risk of severe illness, lifelong health effects, and even death—far harsher consequences than this Court contemplated and deemed necessary when sentencing Mr. Libric.

"§ 3553(a)'s overarching provision instructing district courts to 'impose a sentence

---

[2] *See* "How to Protect Yourself & Others," Centers for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html, accessed July 13, 2020.

sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States,* 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). Based on the devastating and potentially fatal consequences of Covid-19 to Mr. Libric, further incarceration presents a harsher than necessary sentence.  Early release under § 3582 satisfies both the Sentencing Commission policy statement and the parsimony principle of § 3553(a).

### III.
### CONCLUSION

For the aforementioned reasons, Mr. Libric respectfully requests the Court grant his request for compassionate release, reduce his sentence to time served, and order his immediate release from custody.

Dated:  August 6, 2020

By: */S/ Patrick S. Aguirre*
    Patrick S. Aguirre, Esq.
    Attorney for Defendant,
    RENATO LIBRIC

# CERTIFICATE OF SERVICE

<u>Case Name: USA v. Libric No. 18-CR-00196</u>

I hereby certify that on August 6, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

DEFENDANT RENATO LIBRIC'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)

I certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 6, 2020, at Downey, California.

Dated: August 6, 2020                           */s/Luisa Sapien*

                                                Luisa Sapien, Declarant